OPINION
{¶ 1} Defendant-appellant Brad A. Snyder ("Snyder") brings this appeal from the judgment of the Court of Common Pleas of Auglaize County finding Snyder guilty and sentencing him to prison.
 {¶ 2} On May 20, 2002, Snyder went to the home of Richard Rubal ("Rubal"), Snyder's deaf-mute friend, with a gun. Snyder displayed the gun to Rubal and indicated through hand gestures that he wanted money. Rubal gave Snyder $5 and permitted Snyder to use the restroom. Snyder left the gun in the bathroom where Rubal later found it. Rubal then returned the gun to Snyder at a later date and they continued to socialize. On June 5, 2002, Rubal awoke to find Snyder in his apartment. Rubal noticed that Snyder had a paring knife in his hand and took it away from Snyder. Rubal then asked Snyder to leave and Snyder did so. Snyder returned later that night whereupon Rubal made him a sandwich and then again asked Snyder to leave. Rubal later noticed that $34 cash was missing from his apartment. A couple of days later, Rubal noticed that bologna from his refrigerator was missing as well. Thereafter, Rubal and Snyder continued to socialize.
 {¶ 3} On June 8, 2002, Snyder left Ohio to move to Georgia. At that time, Rubal advised some mutual friends that Snyder had stolen items from his apartment. The police were notified and made a report. On June 20, 2002, the Auglaize County Grand Jury returned an indictment charging Snyder with committing aggravated robbery with a gun specification for the May incident and with robbery and burglary for the June incident. Snyder subsequently waived extradition from Georgia and returned to Ohio.
 {¶ 4} From January 13 to January 15, 2003, a jury trial was held. The jury found Snyder not guilty of the aggravated robbery charge, but guilty of a lesser included offense of petty theft. The jury also found Snyder guilty of the burglary and robbery charges associated with the June incident. On March 7, 2003, the trial court sentenced Snyder to concurrent terms of 90 days in prison for the petty theft, seven years in prison for the burglary, and eight years in prison for the robbery. It is from this judgment that Snyder appeals and raises the following assignments of error.
[Snyder's] conviction for robbery is against the manifest weight of theevidence in violation of the due process clause of the federalconstitution.
 Trial court erred in imposing maximum term of incarceration for robberywhere it failed to find necessary factors to impose maximum term ascontemporaneous burglary.
 State's use of preemptory challenge to Mexican-American juror denied[Snyder] equal protection guaranteed under the Fourteenth Amendment tothe Federal Constitution.
 Trial court erred in imposing period of post-release control contraryto R.C. 2967.28.
 ¶ 5 In the first assignment of error, Snyder claims that the robbery conviction is against the manifest weight of the evidence.
Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of theissue rather than the other. It indicates clearly to the jury that theparty having the burden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on its effect in inducing belief.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. To prove a case of robbery, the State is required to prove the following elements: (1) the offender attempted or committed a theft offense, (2) while having a deadly weapon on or about the offender's person or under the offender's control. R.C. 2911.02.
¶ 6 In this case, Rubal testified that Snyder had a paring knife in his hand when Rubal awoke in the middle of the night. That same night, $34 was taken from Rubal's apartment. Thus, the jury reasonably could have concluded that Snyder had the knife either while committing the theft or when he first attempted the theft. The fact that Rubal took the knife away from Snyder does not alter the fact that Snyder had the weapon on his person. The additional fact that Rubal continued to socialize with Snyder after both thefts, while possibly indicating lack of common sense on the victim's part, does not necessarily mean that the robbery did not occur. Therefore, the first assignment of error is overruled.
¶ 7 The second assignment of error raises the question of whether the trial court properly imposed a maximum sentence for the robbery charge. "Except as provided in division (G) of this section or in [R.C. 2925], the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes * * *. R.C. 2929.14(C). "If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by [R.C. 2929.14(A)], [the trial court shall give] its reasons for imposing the maximum prison term." R.C.2929.19(B)(2)(e).
¶ 8 In this case, the trial court sentenced Snyder on two felonies arising out of the same incident. The trial court imposed the maximum term for the second degree felony for the robbery. Thus, the trial court was required to set forth its reasons for imposing the maximum sentence. The trial court made the following findings on the record.
As to Count II, the Court finds that the Defendant caused serious psychological harm to the victim as a result of the offense and that that injury to the victim was worsened by the physical and mental condition of the victim. The Court finds that the Defendant's relationship with the victim facilitated the offense. The Court finds the Defendant shows no remorse for the offense, denying that he committed the offense. The Court does find that no physical harm to persons were (sic) caused by the offense directly; that the harm was psychological. The Court therefore finds the seriousness factors in Count II, and these are also applicable to County III, more serious outweighs less serious. The Court finds that the Defendant has a prior adjudication of criminal history as set forth both juvenile and adult in the Presentence investigation. The Court finds that the Defendant has previously served prison time as set forth in that Presentence Investigation. The Court finds that the Defendant has demonstrated a pattern of drug and alcohol abuse related to the offense, refuses to acknowledge the pattern and treatment as all previous efforts have failed with that with (sic) regard to that. Repeated efforts for treatment have not been complied with. The Defendant has not responded favorably in the past to sanctions imposed for criminal convictions and has repeatedly violated probation and has violated parole. When viewing the history of criminal convictions and criminal acts committed by this Defendant and viewing the risk factors associated with his ongoing criminal conduct and ongoing dangerous conduct, it is clear that the Defendant, first and foremost, is an alcoholic whose addiction has wreaked havoc in his life, has destroyed his relationships, has destroyed his ability to keep from having more and more criminal conduct. It is also apparent that he is not just an alcoholic; that his record shows propensity for violence when alcohol is involved and where his addiction is involved.
* * * The Court finds that the offense on Count III was one of the worst forms of the offenses in light of the circumstances that he knew that the victim was in, in light of the limited capacity that he knew the Defendant, — the victim operated under and his disability. Granted he did not commit a murder; granted he did not commit a felonious assault; he's not conviction of murder or felonious assault, but for the offense of the robbery itself, the Court finds that he committed one of the worst forms of the offense. The Court also finds that he poses the greatest likelihood of committing future crimes given his history.
* * *
The Defendant victimized in this case, though his denial makes absolutely no impact upon me. I have no doubt that this man did this. The Jury didn't either. But this man, in effect, victimized an easy target who was his friend or at least somebody who had befriended him, and I think that's consistent with a pattern of having victimized himself most of his life and probably indirectly victimized the people who love him the most because that's a part of alcoholism. That's a part of the disease.
There was no indication that it was the goal of the Defendant as he committed these burglaries and robberies to inflict physical injury and he intended to because that was the weapon that he was gonna use over this man and that was to intimidate him, if necessary, if the guy woke up. So I came down on the side of yeah, on the robbery he gets the max but I won't run `em consecutive and stack `em up above ten (10), keeping the scope and what was really happening here in some perspective. This Defendant needs to understand that he took a friend of his, someone who at least had befriended him and that he had befriended, at least in his own works "a drinking buddy" and victimized him psychologically significantly.
Sentencing Transcript, 15-19. The trial court reviewed all of the statutory factors, made the necessary findings, and set forth its reasons for imposing the maximum sentence at the sentencing hearing. There is evidence in the record to support all of the trial court's findings and reasons. Although this court may not have reached the same conclusion, we cannot find that the trial court abused its discretion.[1] Therefore, the second assignment of error is overruled.
¶ 9 In the third assignment of error, Snyder claims that the State used a peremptory challenge in a discriminatory manner. Snyder claims that the State excused a Hispanic juror without sufficient explanation. A jury member may not be excused on account of his or her race. Powers v.Ohio (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. The Equal Protection Clause prohibits the use of a peremptory challenge to exclude a juror solely because of his or her race. Id. The defendant must make a prima facie case of purposeful discrimination demonstrating that a member of a racial group was peremptorily challenged and that the facts and circumstances raise an inference that the State used the challenge improperly. State v. Hill (1995), 73 Ohio St.3d 433, 653 N.E.2d 271. Once the defendant makes this case, the burden shifts to the State to provide a race neutral explanation. Id. The explanation does not need to be persuasive or even plausible. Id. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Purkett v. Elem. (1995), 514 U.S. 765, 767-68,115 S.Ct. 1769, 131 L.Ed.2d 834.
Finally, the trial court must determine whether the neutral explanationoffered by the [S]tate is credible or, is instead, a `pretext' forunconstitutional discrimination. * * * The United States Supreme Courtnoted in Hernandez, `[i]n the typical peremptory challenge inquiry, thedecisive question will be whether counsel's race-neutral explanation fora peremptory challenge should be believed. There will seldom be muchevidence bearing on that issue, and the best evidence often will be thedemeanor of the attorney who exercises the challenge.
Id.
¶ 10 In this case, the State used a peremptory challenge to excuse a Hispanic juror. Thus, the defense has shown that the juror is a member of an identifiable racial group. The trial court asked the State to give the basis for the challenge and the State replied that it had previously prosecuted members of the juror's family. The trial court then noted that the record did not support that conclusion. The State then claimed that it recognized the juror from other hearings and did not believe the juror would be fair and impartial. This explanation is not inherently race based and no discriminatory intent is obvious from the explanation. Thus, the explanation offered must be deemed race neutral. The trial court accepted the reason given by the State, hence it must have determined that the challenge was not being made for any discriminatory purpose. The third assignment of error is overruled.
¶ 11 Finally, Snyder claims that the trial court erred in imposing a period of post-release control. R.C. 2967.28 states as follows.
(B) Each sentence to a prison term * * * for a felony of the second degree * * * shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be one of the following periods:
* * *
(2) For a felony of the second degree that is not a felony sex offense, three years;
R.C. 2967.28. The trial court must inform the defendant that post-release control is a part of the sentence. Woods v. Telb,89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103.
¶ 12 In this case, the trial court's journal entry states the following.
The Court has further notified the Defendant that post release controlis MANDATORY in this case for THREE (3) years, as well as theconsequences for violating conditions of post release control imposed bythe Parole Board under Ohio Revised Code 2967.28. The defendant isORDERED to serve as part of this sentence any term of post releasecontrol imposed by the Parole Board, and any prison term for violation ofthat post release control.
Journal entry, 2.
¶ 13 A review of the journal entry indicates that the trial court did not impose a post release control, but notified Snyder that the Parole Board was required to impose a three year post release control sanction by statute. Although the Parole Board has the authority to later modify the sanction and reduce the time if it finds that Snyder is complying with the post release controls, they are still required to impose a three year sanction. The trial court's notification of the post release control was required. The trial court, as required, merely ordered Snyder to serve any term of post release control imposed by the Parole Board. Therefore the fourth assignment of error is overruled.
¶ 14 The judgment of the Court of Common Pleas of Auglaize County is affirmed.
 Judgment affirmed.
WALTERS and SHAW, JJ., concur.
[1] Imposition of eight years in prison for stealing less than $34.00 and some bologna seems extreme. Especially when the testimony was that victim not only easily took the knife away from Snyder but later allowed him to enter the home and gave him additional food.